UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

EDMOND ROBERT MANSOOR,

    Plaintiff,

  v.

M/V ZAANDAM, et al.,

    Defendants.

No. C05-1027P

ORDER ON SUMMARY JUDGMENT MOTIONS

    This matter comes before the Court on Defendants' motion for summary judgment. (Dkt. No. 24). In his response to Defendants' motion, Plaintiff moved for partial summary judgment in his favor. (Dkt. No. 29). Having reviewed the papers and pleadings submitted by the parties and finding that oral argument is not necessary for the disposition of these matters, the Court hereby ORDERS as follows:

    (1)    Defendants' motion for summary judgment is DENIED (Dkt. No. 24) because genuine issues of material fact exist for trial.

    (2)    Plaintiff's motion for partial summary judgment (Dkt. No. 29) is STRICKEN because it was submitted after the deadline for filing dispositive motions in this matter.

The reasons for the Court's order are set forth below.

ORDER - 1

**Background**

Plaintiff Edmond Mansoor was a passenger on the M/V Zaandam, a cruise ship operated by Defendants, during a one-week cruise that began and ended in Florida. On December 8, 2004, Plaintiff slipped and fell on the ship's Lido deck. Plaintiff suggests that he slipped on a combination of food and water that had been spilled on the deck, while Defendants maintain that Plaintiff slipped on water from a nearby pool or hot tubs.[1] According to Mr. Mansoor's wife, passengers on the ship routinely carried food on the Lido deck from nearby self-service food stands, as well as from a restaurant and bar. Ms. Mansoor states that there were many food spills in the area during the cruise and that the spills were not taken care of on any schedule or regular basis.

**Analysis**

Summary judgment is not warranted if a material issue of fact exists for trial. Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995). The Court views the evidence in the light most favorable to the non-moving party. Id. "Summary judgment will not lie if . . . the evidence is such that a reasonable [fact-finder] could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

**1.      Applicable Law**

As a threshold matter, the parties disagree whether this dispute is governed by general maritime law or by the laws of the state of Washington. Both sides point to a choice of law provision in Mr. Mansoor's cruise tour contract. For tours that begin, end, or call at a port in the United States, the contract provides:

> [T]his contract and its interpretation shall, to the maximum extent allowed under the general maritime law of the United States, be governed by and construed in accordance with the general maritime law of the United States; to the extent such maritime law is not applicable, it

---

[1] Defendants note that the Lido deck contained many permanent and portable warning signs stating "Deck Slippery when Wet." However, Defendants do not maintain that the deck contained signs warning of other hazards. Defendants have not argued that the "Slippery when Wet" signs were sufficient to warn passengers of other slipping hazards that may have existed on the deck.

ORDER - 2

shall be governed by and construed in accordance with the laws of the State of Washington (U.S.A.).

Plaintiff asserts that this choice of law clause provides that Washington law applies. However, the plain language of the clause indicates that Washington law only applies to the extent that general maritime law is not applicable. Plaintiff offers no reason why general maritime law would not be applicable here. It is well-established that general maritime law applies to cases that involving torts that are committed aboard vessels in navigable waters. See, e.g., Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625 (1959) (holding that general maritime law applies to injuries that occur aboard a ship in navigable waters). Therefore, the Court will apply general maritime law in this case.

**2.   Negligence Claim**

Under general maritime law, "the owner of a ship in navigable waters owes to all who are on board for purposes not inimical to his legitimate interests the duty of exercising reasonable care under the circumstances of each case." Kermarec, 358 U.S. at 632. Here, Plaintiff maintains that Defendants violated their duty of care by allegedly failing to conduct regular inspections to keep the Lido deck clear of spilled food or drinks.

The pending motions turn largely on two issues: (1) whether there is evidence that Plaintiff slipped on food and/or drink that had been spilled on the Lido deck; and (2) whether Plaintiff can or must prove that Defendants had actual or constructive notice of the dangerous condition that allegedly caused Plaintiff to fall.

A.   Cause of the Accident

Defendants argue that there is no evidence that Plaintiff slipped on food on the Lido deck. (Reply at 4-5). However, Plaintiff clearly suggested at his deposition that he slipped on a "residue of food" on the deck. He testified:

> I noticed water after I fell. I saw that there was some food particles – it looked to me like crumbs of bread, and it looked really and truly – it looked to me like salsa, ketchup maybe, if – relish or small onions, thing [sic] like this.

ORDER - 3

> And what I saw in that area where I fell, I – I saw a trail, because I looked. I could not believe I fell down. I walk all my life on decks with water and so on. And on that particular day, you know, you don't remember where the water was here wet or over here and so on. But in here, the moment I fell down, it was wet. It was wet with some residue of – of food. So – and it left really a trail – small trail or – that – you know, dirt or food or whatever you may call it, residue of food.

(Plaintiff's Deposition, Dkt. No. 24-4, at 54:24 - 55:13). In addition, Plaintiff indicated in responses to interrogatories that he "slipped and fell on what appeared to be water or some sort of liquid and some food waste mixed therein." (Dkt. No. 24-5, Ex. C at 9).

Defendants argue that Plaintiff never told anyone on the ship or his doctor that his fall was caused by food on the deck, rather than by water from the nearby pool or hot tubs. Although such omissions may be used by Defendants to challenge Plaintiff's credibility at trial, the Court does not resolve issues of credibility at the summary judgment stage. Therefore, the Court finds that Plaintiff has offered sufficient evidence to raise a genuine issue of material fact on this issue.

      B.    <u>Actual or Constructive Notice</u>

Defendants next argue that Plaintiff's claim must be dismissed because he cannot demonstrate that Defendants had actual or constructive notice of the dangerous condition that allegedly caused his accident. Courts have held that a shipowner must "have had actual or constructive notice of the risk-creating condition" in order to be held liable for negligence. <u>Keefe v. Bahama Cruise Line, Inc.</u>, 867 F.2d 1318, 1322 (11th Cir. 1989); <u>see also</u> <u>Monteleone v. Bahama Cruise Line, Inc.</u>, 838 F.2d 63, 65 (2d Cir. 1988) ("a shipowner is responsible for defective conditions aboard ship only when it has actual or constructive notice of them."). Constructive notice "requires that a defective condition exist for a sufficient interval of time to invite corrective measures." <u>Monteleone</u>, 838 F.2d at 65. Defendants argue that Plaintiff cannot demonstrate actual or constructive notice because he has no evidence that food was on the deck for a sufficient period of time to allow Defendants to discover the hazard.

ORDER - 4

Plaintiff suggests that it is unnecessary to prove that Defendants had actual or constructive notice of the food spill that allegedly caused Plaintiff's accident. See Pl.'s Opp. at 12 (arguing that "[p]roving actual or constructive knowledge of a hazard is not necessary if the existence of the hazard was reasonably foreseeable"). Plaintiff largely relies on Washington law to support this argument. See, e.g., Pimental v. Roundup Co., 100 Wn.2d 39, 49 (1983) (Under Washington law, plaintiff need not show actual or constructive notice of an unsafe condition "when the nature of the proprietor's business and his methods of operation are such that the existence of unsafe conditions on the premises is reasonably foreseeable"). However, Plaintiff's reliance on Washington law is misplaced because this matter is governed by general maritime law.

Plaintiff also points to McDonough v. Celebrity Cruises, Inc., 64 F. Supp.2d 259 (S.D.N.Y. 1999). The McDonough court denied summary judgment in a case where a cruise ship passenger was injured when a passenger on a higher deck dropped a drink that had been served in a heavy coconut shell. The court found that the shipowner could conceivably be liable for "creating a situation in which it was foreseeable that cruise passengers could drop a heavy coconut and injure passengers below." Id. at 264. The McDonough court found that "[t]o require a plaintiff to . . . establish notice in a case where the defendant's own activities created a foreseeable and unreasonable risk of harm would be inappropriate." Id.

In Galentine v. Holland America Line-Westours, Inc., 333 F. Supp.2d 991 (W.D. Wash. 2004), this Court previously declined to follow the reasoning of the McDonough court. However, this Court also noted as follows:

> A defendant is deemed to have constructive notice "if, in the exercise of reasonable care, [the defendant] ought to have known about or discovered the alleged dangerous condition . . . ." Ribitzki v. Canmar Reading & Bates, 111 F.3d 658, 663 (9th Cir. 1997). This implies a duty of reasonable inspection. Further, constructive notice "requires that a defective condition exist for a sufficient interval of time to invite corrective measures." Monteleone, 838 F.2d at 65. Therefore, if by reasonable inspection, Defendant Holland America could have discovered [the dangerous condition], then Defendant will be deemed to have constructive knowledge.

ORDER - 5

1  Galentine, 333 F. Supp. 2d at 996-97.  As a result, a defendant may be deemed to have constructive
2  knowledge of a dangerous condition if the defendant could have discovered the conditions by
3  conducting reasonable inspections.
4      In this case, Plaintiff maintains that Defendants were negligent because they permitted
5  passengers to carry food from nearly self-service stands around the Lido deck without conducting
6  regular inspections to ensure that spilled food was removed.  To support this allegation, Plaintiff has
7  introduced a declaration from his wife, in which she maintains that the Lido deck "has a bar, a
8  restaurant and two self-service food stands all of which allowed people to carry food to the pool area"
9  and that "[s]ince people are not confined to any particular area while eating, the spilling of food and
10 drink around the Lido deck is commonplace."  (Nabila Mansoor Decl. ¶ 3).  Ms. Mansoor also asserts
11 that "during the trip . . . we witnessed food and/or drinks being spilled on deck and the spills were not
12 taken care of on any schedule or regular basis."  Id. ¶ 5.  This suggests that conditions on the Lido
13 deck may have been dangerous throughout the cruise due to the alleged failure of crewmembers to
14 conduct regular inspections to remove spilled food or drinks.
15     Viewing the evidence in the light most favorable to Plaintiff, the Court finds that Plaintiff has
16 offered sufficient evidence to create a genuine issue of material fact on the constructive notice issue.
17 Ms. Mansoor maintains that during the cruise, food was frequently spilled on the deck and Defendants
18 failed to conduct regular inspections to take care of such spills.  If her allegations are accepted as true,
19 Defendants could be deemed to have had constructive knowledge of a dangerous condition that could
20 have been detected through reasonable inspections.
21 **3.    Plaintiff's Cross-Motion**
22     In his opposition brief, Plaintiff submitted a cross-motion for partial summary judgment on the
23 question of whether Defendants failed to conduct regular inspections of the Lido deck.  However, as
24 Defendants note, the deadline for filing summary judgment motions in this case was May 9, 2006.
25

ORDER - 6

1  Because Plaintiff did not submit his motion for partial summary judgment until May 30, 2006, the

2  Court strikes Plaintiff's cross-motion as untimely.

3                                              **Conclusion**

4      For the reasons discussed above, the Court denies Defendants' motion for summary judgment

5  because genuine issues of material fact exist.  The Court also strikes Plaintiff's cross-motion for partial

6  summary judgment as untimely.

7      The clerk is directed to provide copies of this order to all counsel of record.

8      Dated:  June 15, 2006

10                                  s/Marsha J. Pechman
                                    Marsha J. Pechman
11                                  United States District Judge

ORDER - 7